# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| TAM TRAN NGUYEN, | : | CIVIL ACTION NO. |
| BOP Reg # 26699-013, | : | 1:04-CV-1019-CC-JCF |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:96-CR-161-CC-JCF-2 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate his 720-month sentence. (Doc. 1225). For the reasons stated below, **IT IS RECOMMENDED** that the motion be **DENIED**.

## I.   Procedural History

On August 28, 1997, a federal grand jury sitting in the Northern District of Georgia returned a twenty-nine count . . . indictment against [Movant] and twenty-five co-defendants. . . . [C]ount one of the indictment charged racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)[1]; count two charged RICO conspiracy in violation of 18 U.S.C. § 1962(d)[2]; and, count twenty-eight charged a Hobbs Act extortion in violation of

---

[1]"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity [as defined in § 1961(1)] or collection of unlawful debt." 18 U.S.C. § 1962(c).

[2]"It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

18 U.S.C. § 1951(a)[3].  On October 31, 1997, ten defendants, including [Movant], proceeded to trial. Initial verdicts by the jury were received on March 9, 1998, and after the jury was given an *Allen v. United States*, 164 U.S. 492 (1896) charge, final verdicts were received on March 27, 1998. [Movant] was convicted on count one of racketeering acts 18 (business extortion) and 39-a and 39-b (kidnapping), on count two, and on count twenty eight.

(Doc. 1466 at 1-2 (citations altered or omitted); *see* Doc. 550 (fourth superseding indictment)); *see also United States v. Nguyen*, 255 F.3d 1335, 1338 n.2 (11th Cir. 2001) ("The indictment allege[d] that [Movant] committed thirty-three predicate acts in furtherance of the enterprise. The jury found that [Movant] committed two of the charged acts, extortion and kidnapping.").  On October 6, 1998, this Court sentenced Movant to life imprisonment on the RICO counts.  (Doc. 1466 at 2; *see* Doc. 1538-3 at 63-72 (1st Sent'g Hr'g Tr.); *id.* at 84-85 (Judgment)).  Movant and five of his co-defendants at trial filed a joint appeal.  *Nguyen*, 255 F.3d at 1337.

On appeal, the Eleventh Circuit rejected several claims without discussion, including the claim that this Court "abused its discretion in excusing a juror who stated she no longer could be impartial in her deliberations instead of granting a mistrial," *id.*

---

[3]"Whoever *in any way or degree* obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a) (emphasis added).

AO 72A
(Rev.8/82)

at 1339 n.5, and also rejected the claim that this Court "erred in refusing to instruct the jury on the lesser included offenses of certain RICO predicate acts that are state law offenses," *id.* at 1339-40.  The Eleventh Circuit then considered appellants' claims that this Court erred in (1) enhancing their sentences (a) "using predicate acts that the court found using the preponderance of the evidence standard" and (b) "beyond RICO's statutory maximum by using conduct that the jury failed to find they committed"; and (2) "applying the multiple count section of the Guidelines when calculating [their] offense levels." *Id.* at 1339.  The Eleventh Circuit found error in certain aspects of this Court's sentencing calculations.

> The jury verdicts in this case are . . . ambiguous. In order to be guilty of a RICO conspiracy, a defendant must either agree to commit two predicate acts or agree to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise. The verdict form supplied to the jury in this case polled the jury on each predicate act the Government alleges that the defendants committed in furtherance of the RICO enterprise [that is, for the count one substantive RICO charge]. The jury was instructed to find a defendant responsible for a predicate act if the defendant "knowingly and willfully committed, or knowingly and willfully aided and abetted the commission" of the act. The jury was not instructed, however, to find which predicate acts each defendant had agreed to commit or which acts each defendant knew and intended would be committed as part of the pattern of racketeering activity [that is, for the count two RICO conspiracy charge]. Because the jury was not specifically polled on the predicate acts underlying the RICO conspiracy count, the jury's verdict was necessarily ambiguous as

3

to which predicate acts supported the guilty verdicts on the conspiracy count. The court was therefore required to determine the predicate acts underlying each defendant's conspiracy conviction using the reasonable doubt standard.

*Id.* at 1341-42 (citations and footnote omitted); (*see* Doc. 1538-3 at 78-82 (the jury verdict form returned on March 9, 1998)).  The Eleventh Circuit concluded that although Movant's "offense level was enhanced due to the grouping rules being applied to conduct found using the preponderance standard[,]" the "error was harmless" because "even absent the enhancement, [he] would have received the statutory maximum on the RICO conspiracy charge."  *Nguyen*, 255 F.3d at 1342.

As for the claim that Movant's life sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Eleventh Circuit concluded that Movant's RICO "sentences must . . . be vacated because they exceeded forty years, the combined maximum sentences of the substantive count and the conspiracy count."  *Nguyen*, 255 F.3d at 1343-44.  Finally, the Eleventh Circuit rejected the argument that this Court "erred in applying the Guidelines' grouping rules" to enhance Movant's sentence because "[t]he plain language of the Guidelines . . . clearly indicates that a sentencing court *must* apply the grouping rules, where applicable, to determine a defendant's offense level for underlying racketeering conduct."  *Id.* at 1344.

4

The Eleventh Circuit vacated Movant's "sentences on both the substantive RICO and conspiracy counts" and remanded for Movant to be sentenced "to no more than 480 months" on those two counts.  *Id.* at 1346.  On November 28, 2001, on remand, the Court resentenced Movant to 720 months' imprisonment—240 months for each RICO count and 240 months for the Hobbs Act count, to run consecutively.  (*See generally* Doc. 1538-3 at 91-121 (2d Sent'g Hr'g Tr.); *id.* at 116-18; *id.* at 187 (Order Amending Judgment)).  On December 27, 2002, the Eleventh Circuit affirmed that result without opinion, and on May 5, 2003, the Supreme Court of the United States denied Movant's petition for certiorari review.  (Doc. 1466 at 2 (citing *United States v. Nguyen*, 55 Fed. Appx. 900 (11th Cir. 2002); *Nguyen v. United States*, 538 U.S. 1022 (2003))).

When Movant filed his § 2255 motion (Doc. 1225), this Court initially dismissed it as time-barred (Doc. 1282), but the Eleventh Circuit reversed and ordered this Court to consider the merits of Movant's § 2255 claims (Doc. 1429).

## II.   **Movant's § 2255 Claims**

On reply (Doc. 1468), Movant restates his nine grounds for relief as follows:

1.   The district court erred at sentencing by finding [Movant] committed predicate acts that the jury did not find [he] committed, and counsel was ineffective for failing to object to the ambiguous verdict and move for

5

acquittal, and for failing to raise the issue of the ambiguous verdict on appeal;

2.    [Movant] was denied a fair trial and his due process rights were violated because the district court allowed the government to present racketeering acts listed in the indictment that were allegedly prejudicial and confused the jury;

3.-4.   The evidence was insufficient to support [Movant's] conviction on count twenty-eight because (1) the victim was an individual, rather than a business, and (2) the alleged extortion did not affect interstate commerce, and counsel was ineffective for failing to challenge count twenty-eight on these grounds;

5.    The district court erred by sentencing [Movant] based on conduct for which he was not convicted by the jury; and counsel was ineffective for failing to challenge [Movant's] sentence on that ground;

6.    The district court erred by excusing a juror who stated she could no longer be impartial rather than granting a mistrial, and counsel was ineffective for failing to raise this issue;

7.    The district court's modified *Allen* charge was unduly coercive and constituted error; and counsel was ineffective for failing to object;

8.    [Movant] was deprived of a fair trial due to the cumulative error resulting from counsel's overall deficient performance and [this Court's] errors set forth in Grounds One through Seven; and

9.    [C]ounsel was ineffective on appeal for failing to raise on appeal the errors set forth in Grounds One through Seven.

(Doc. 1468 at 2-3; *see* Doc. 1225 at 7-69).

## III.   **Standards Of Review**

6

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "[N]onconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' *Reed v. Farley*, 512 U.S. 339, 348 (1994)." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citation altered and internal quotations omitted).

## A.   **Procedural Default**

In general, "an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (citation omitted); *but see Massaro v. United States*, 538

7

U.S. 500, 504 (2003) (holding that claim of ineffective assistance of trial counsel "may be brought in a collateral proceeding under § 2255, whether or not the [movant] could have raised the claim on direct appeal").   In ruling on a § 2255 motion, a federal district court "is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).

> When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. Alternatively, under the fundamental miscarriage of justice exception, in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Mills*, 36 F.3d at 1055 (citations and internal quotations omitted); *see McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001) ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").

To establish cause, a movant must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded counsel's efforts to comply with the

8

. . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar.  In order to do so, however, the claim of ineffective assistance must have merit." *Nyhuis*, 211 F.3d at 1344 (citation omitted).

"To establish 'prejudice,' a [movant] must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003); *see Lynn v. United States*, 365 F.3d 1225, 1235 n.21 (11th Cir. 2004) (noting that "cause and actual prejudice standard" for § 2255 motion "mirrors the standard used to evaluate collateral attacks on state convictions").  The actual innocence standard set forth above applies both to a time bar and to a procedural bar based on default. *See Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998) (applying actual innocence standard to procedural default of § 2255 claims).

**B.    Ineffective Assistance Of Counsel**

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion).  "An

9

ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The analysis involves two components, but a court need not address both if the movant "makes an insufficient showing on one." *Id.*

First, the court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the movant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the [movant's] burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*).

Second, the court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's

10

unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694.

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations and internal quotations omitted).

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on

11

appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).  But appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant." *Lucey*, 469 U.S. at 394; *see Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that [appellate] counsel was incompetent" for failing "to raise a particular claim," and "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (internal quotations omitted)); *Heath v. Jones*, 941 F.2d 1126, 1132 (11th Cir. 1991) (stating that neglected claim satisfies test for ineffective assistance only if claim would have had "a reasonable probability of success on appeal").

## IV.   **Discussion**

The government argues that Movant has procedurally defaulted any substantive claims that he has raised in his § 2255 motion but did not raise on direct appeal and that he cannot establish cause to excuse his procedural default of those claims because he has not raised a viable claim of ineffective assistance of counsel.  (Doc. 1466 at 9-12).  Movant asserts otherwise and notes that he was represented by the same attorney at trial and on appeal, so that his § 2255 motion is his first opportunity to raise claims of ineffective assistance of counsel.  (Doc. 1468 at 5-9).

12

The government's argument is well-taken.  Because, as discussed below, Movant has not presented a meritorious claim of ineffective assistance of counsel or any other cognizable ground as cause to excuse the procedural default of any substantive claim that he did not raise on direct appeal, any such substantive claim is barred from review here.  *See Mills*, 36 F.3d at 1055; *see also McCoy*, 266 F.3d at 1258; *Nyhuis*, 211 F.3d at 1344 ("Ineffective assistance of counsel may satisfy the cause exception to a procedural bar.  In order to do so, however, the claim of ineffective assistance must have merit." (citation omitted)).  And this Court need not address any substantive claim that was decided against Movant on direct appeal.  *See Nyhuis*, 211 F.3d at 1343.

A.    **Sentencing Issues**

Because Movant's sentencing claims involve complicated issues, it is helpful to review the changes in sentencing law that could arguably impact his claims.  At the time of Movant's trial, it was commonplace for a district court to use the preponderance standard to make findings of fact to enhance a defendant's sentence beyond the statutory maximum for his crimes of conviction, based on acts that had not been charged in the indictment against the defendant or that had been charged but for which the jury had failed to convict him.

13

1.      ***Apprendi v. New Jersey* (2000)**

In June 2000, the Supreme Court changed this approach by holding: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *but see United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir. 2001) (*en banc*) ("A factual finding under the Guidelines determines the sentence within the statutory range rather than outside it.  Because *Apprendi* only addresses facts that increase the penalty for a crime beyond the statutory maximum, it does not apply to those findings that merely cause the guideline range to shift within the statutory range." (footnote omitted)); *see also United States v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005) ("[B]efore *Blakely* was decided, every federal court of appeals had held that *Apprendi* did not apply to guideline calculations made within the statutory maximum." (internal quotations omitted)).

Even after *Apprendi*, then, a district court could use extra-verdict facts to enhance a defendant's sentence as long as the result of the enhancement did not exceed the statutory maximum for the defendant's crimes of conviction.[4]

_____

[4]The *Apprendi* rule does not apply retroactively to cases on collateral review.  *See McCoy v. United States*, 266 F.3d 1245, 1258-59 (11th Cir. 2001) ("hold[ing] that the new constitutional rule of criminal procedure announced in *Apprendi* does not apply retroactively on collateral review" and

14

AO 72A
(Rev.8/82)

###### 2. *Blakely v. Washington* (2004)

In June 2004, the Supreme Court held in *Blakely v. Washington*, 542 U.S. 296 (2004), "that the imposition of a sentencing enhancement under the state of Washington's mandatory guidelines system based on facts neither admitted by the defendant nor found by the jury violated the defendant's Sixth Amendment right to trial by jury." *United States v. Rodriguez*, 398 F.3d 1291, 1297 (11th Cir. 2005) (citing *Blakely*, 542 U.S. at 298-305). Such an enhancement was impermissible even if it did not constitute what is commonly termed an *Apprendi* error, i.e., even if the defendant's sentence after the imposition of the improper enhancement remained below the statutory maximum sentence for his crime of conviction.

###### 3. *United States v. Booker* (2005)

Seven months later, in January 2005, the Supreme Court in *United States v. Booker*, 543 U.S. 220, 231-33 (2005), applied the *Blakely* rule to the federal sentencing guidelines and held that "the Sixth Amendment right to trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an

---

that counsel's failure to raise an *Apprendi* claim on direct appeal was not sufficient cause to excuse the § 2255 movant's procedural default of the claim). Because *Apprendi* was decided when Movant's direct appeal was pending, however, the Eleventh Circuit applied it in vacating his life sentences, which exceeded his RICO statutory maximum sentences of 20 years' imprisonment.

15

enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." *Rodriguez*, 398 F.3d at 1297-98; *see Booker*, 543 U.S. at 233 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. *We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.*" (emphasis added)).

A *Blakely* error is in fact a *Booker* error. *See, e.g., United States v. Norton*, 176 Fed. Appx. 992, 993 (11th Cir. 2006) (appellant claimed that his sentencing "enhancements were unconstitutional under *Blakely* (now *Booker*)"). "The constitutional [*Booker*] error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the *mandatory* nature of the guidelines once the guidelines range has been determined." *United States v. Mathenia*, 409 F.3d 1289, 1291 (11th Cir. 2005) (internal quotations omitted) (emphasis added).

The Eleventh Circuit has held that neither *Blakely* nor *Booker* applies retroactively. *See Varela v. United States*, 400 F.3d 864, 867 (11th Cir. 2005) ("While neither this Court nor the Supreme Court has addressed the retroactivity of *Blakely* or

16

*Booker* in the context of a § 2255 motion, the Supreme Court's recent decision in *Schriro v. Summerlin*, 542 U.S. 348 (2004), is essentially dispositive[, for i]n *Schriro*, the Supreme Court concluded that the new requirement in *Ring v. Arizona*, 536 U.S. 584 (2002), which, like *Blakely* and *Booker*, is an application of *Apprendi's* principles, does not apply retroactively to cases on collateral review." (citing *Schriro*, 542 U.S. at 357-58) (citations altered)); *see also Howell v. Sec'y, Fla. Dep't of Corr.*, 730 F.3d 1257, 1264 (11th Cir. 2013) (Jordan, J., concurring) (citing *Varela* and stating a "*Blakely* argument [was] foreclosed by [Eleventh Circuit] precedent. . . . holding that *Blakely* and [*Booker*] are not retroactive on collateral review").

A *Blakely/Booker* error properly raised on direct appeal may be deemed harmless when it is clear that a defendant who was sentenced under a mandatory sentencing scheme would have received the same term of imprisonment under a non-mandatory scheme.  *See United States v. Paz*, 405 F.3d 946, 947 (11th Cir. 2005) (applying "harmless error [review] to a sentence imposed using extra-verdict enhancements in a mandatory guideline system"); *see also United States v. Lee*, 427 F.3d 881, 891-92 (11th Cir. 2005) (noting that "a *Blakely* objection [presented] to the district court [is] now construed as an objection under *Booker* [and] review[ed] for harmless error," and that "*Booker* constitutional errors are harmless where the

17

government can show beyond reasonable doubt that the error did not contribute to the defendant's ultimate sentence[,]" that is, that the defendant would have received the same sentence had the district court not been bound by the sentencing guidelines).

### 4.        Sentencing Law Summary

In sum, *Apprendi*, *Blakely*, and *Booker* deal with the tension between, on the one hand, the Sixth Amendment's guarantee of the right to a trial by jury, allowing a defendant to be convicted and sentenced only when a jury reaches a verdict beyond a reasonable doubt, and, on the other hand, a district court's authority under the sentencing guidelines to enhance a defendant's sentence based on extra-verdict facts. The Supreme Court changed the applicable law in June 2000, in *Apprendi*, to prohibit a district court from using extra-verdict facts to enhance a sentence beyond the statutory maximum for a defendant's crimes of conviction.  That change remains in effect.

For a brief period, it appeared that an application of the Supreme Court's June 2004 *Blakely* decision to the federal sentencing guidelines might also prohibit a defendant's sentence from exceeding the maximum *guidelines* sentence, based solely on the facts the jury had found beyond a reasonable doubt, even though the sentence did not exceed the maximum *statutory* sentence.  *Booker*, however, cushioned

18

*Blakely's* impact seven months later by holding that the Sixth Amendment error identified in *Blakely* occurs only when the district court considers the sentencing guidelines to be mandatory rather than advisory. This outcome leaves a district court with the authority to sentence a defendant up to the statutory maximum, based on extra-verdict facts and the court's overall determination of a just sentence, in light of all the defendant's criminal activity regardless of whether he was charged with and convicted of that activity.

      **A.**    <u>**Movant's Sentencing Claims**</u>

           **1.**    <u>**Ground One:  This Court Erred By Sentencing Movant Based On Predicate Acts The Jury Did Not Find He Committed, And Counsel Did Not Object.**</u>

In ground one, Movant argues that this Court erred by sentencing him on the RICO conspiracy count based on predicate acts that the jury did not find that he had committed, inasmuch as "the jury verdict was ambiguous as to which 'act' allegedly committed by Movant supported" the count. (Doc. 1225 at 7). He argues that this procedure "violated his Sixth Amendment . . . right to have the jury find which requisite acts it believed were part and parcel to any alleged conspiracy that was charged in the Indictment." (*Id.* at 9). He also argues that counsel was ineffective for failing to object to his count 2 sentence on this basis. (*Id.*; *see* Doc. 1468 at 10-11).

19

On direct appeal, Movant's counsel challenged this Court's use of the preponderance standard to attribute predicate acts to Movant on the conspiracy count, but did not, as Movant does now, challenge this Court's use of the reasonable doubt standard to make that attribution.  As the discussion below shows, even if counsel had raised Movant's ground one claim in this Court or on direct appeal, it would have failed.

The Eleventh Circuit recently applied the *Booker* sentencing scheme to a RICO conviction as follows:

> A conviction for violating RICO carries with it a statutory maximum sentence of 240 months.  18 U.S.C. § 1963(a).  A guilty verdict, then, regardless of its form, subjects the defendant to a sentence at or below the maximum.  It is up to the district court to determine the appropriate sentence.  To do so, it must engage in two intertwined analyses.  First, it must determine the Guidelines sentencing range.  *United States v. Booker*, 543 U.S. 220, 259-60 (2005).  Next, the court must consider the sentencing factors, or objectives, found in 18 U.S.C. § 3553(a).  *Id.* These two steps satisfy the court's procedural duties.  Since the Guidelines sentencing range is non-binding post-*Booker*, the court is free, after considering the § 3553(a) factors, to impose a sentence above or below that range.  *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005).  All that is required is that the sentence be substantively reasonable, *id.*, meaning that, in part, it is proportional to such broad notions as "the nature and circumstances of the offense and history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1).  *There is, and has never been, a requirement that the district court make its sentencing decision based solely on conduct the jury found beyond a reasonable doubt.*

20

*United States v. Bradley*, 644 F.3d 1213, 1295-96 (11th Cir. 2011) (footnote omitted) (citations altered) (emphasis added) ("[T]he Sentencing Guidelines represent but one means of settling on a substantively reasonable sentence commensurate with the seriousness of the crime. For that reason, we have repeatedly held that, after identifying the guideline that applies to the offense of conviction and the base offense level, the district court may find all other facts relevant to Specific Offense Characteristics and Adjustments by a preponderance of the evidence."); *see id.* at 1297 ("[W]hen a defendant is acting in concert with others, the appropriate conduct to consider for sentencing purposes is far broader than the conduct that drove the original conviction." (footnote omitted)).

On direct appeal here, the Eleventh Circuit noted the following:

In *United States v. McKinley*, 995 F.2d 1020 (11th Cir. 1993), we addressed the question of how a court should determine the appropriate offense level when a defendant is convicted of a multi-object conspiracy by a general verdict. The trial court in *McKinley* had refused a defense request for a special verdict that would specify which of the object offenses the defendants conspired to commit. *See McKinley*, 995 F.2d at 1023. The jury thereafter returned a general verdict finding the defendants guilty of conspiracy. *See id.* On appeal, we concluded that the commentary to the Guidelines made it clear that when a jury verdict is ambiguous as to the offenses that are the object of a conspiracy, the court must find that an offense was such an object using the reasonable doubt standard before the offense can be the basis for a defendant's sentence. *See id.* at 1026. We recently extended the *McKinley* rule to

21

> RICO conspiracies in *United States v. DiGiorgio*, 193 F.3d 1175 (11th
> Cir. 1999). As in *McKinley*, the jury in *DiGiorgio* returned a general
> verdict finding the defendants guilty of RICO conspiracy but not
> indicating which predicate acts the jury had found the defendants had
> committed. *See DiGiorgio*, 193 F.3d at 1177-78. Because the jury
> verdict was ambiguous as to which acts supported the conspiracy
> conviction, we held that the court properly based the defendants' offense
> level upon predicate acts that the court found the defendants had
> committed beyond a reasonable doubt. *See id.*

*Nguyen*, 255 F.3d at 1341 (footnote omitted); *but see United States v. Garcia*, 754 F.3d

460, 482 (7th Cir. 2014) (stating that the Eleventh Circuit position is a minority view

and that most courts of appeal "reason that RICO conspiracies are of the single-object

variety, with the object being to engage in racketeering[, and t]he predicate

racketeering acts are not, in themselves, conspiratorial objects").

The Eleventh Circuit found that at Movant's trial "the jury's verdict was

necessarily ambiguous as to which predicate acts supported the guilty verdicts on the

conspiracy count. [This Court] was therefore required to determine the predicate acts

underlying each defendant's conspiracy conviction using the reasonable doubt

standard." *Nguyen*, 255 F.3d at 1342 (footnote omitted). The Eleventh Circuit

approved this Court's determination of Movant's count 2 predicate acts using the

reasonable doubt standard. *Id.* It also deemed harmless this Court's use of the

preponderance standard for certain count 2 predicate acts. It did so because, having

22

accepted Movant's *Apprendi* argument, it reduced his sentence on each RICO count to the 20-year statutory maximum, which the Eleventh Circuit found to be justified for the conspiracy count based on this Court's reasonable doubt findings alone. *Id.* at 1342, 1344.

Movant's ground one argument—that the Sixth Amendment prohibited this Court from independently attributing *any* predicate acts to him on his conspiracy conviction—fails. At least at the time of Movant's trial and throughout the course of his direct appeal, Eleventh Circuit law allowed a district court to make findings beyond a reasonable doubt as to the predicate acts supporting a RICO conspiracy count when the jury had not been asked to do so. *See Nguyen*, 255 F.3d at 1341. Because the jury found beyond a reasonable doubt that Movant was guilty of a RICO conspiracy, this Court had the authority to sentence him to any term of imprisonment within the statutory range for that conspiracy based on his overall criminal conduct and history. *See Bradley*, 644 F.3d at 1295-96 ("There is, and has never been, a requirement that the district court make its sentencing decision based solely on conduct the jury found beyond a reasonable doubt."). There is no reasonable probability that the Eleventh Circuit would have overturned Movant's 20-year RICO conspiracy sentence had counsel raised Movant's ground one claim. Movant thus has shown neither deficient

23

performance nor prejudice resulting from counsel's performance with respect to this Court's ultimate determination of Movant's sentence on the RICO conspiracy count.[5] *See Strickland*, 466 U.S. at 690, 694.  Movant's ground one ineffective-assistance claim fails, and because it fails, he has not demonstrated sufficient cause to excuse the procedural default of his ground one substantive claim.  *See Nyhuis*, 211 F.3d at 1344.

## 2.   Ground Five:  Movant Was Sentenced Based On Conduct For Which He Was Not Convicted, And Counsel Did Not Object.

In ground five, Movant argues that his sentences exceed the maximums under the sentencing guidelines for his crimes of conviction, based on the offenses that the jury attributed to him beyond a reasonable doubt.  He claims that those offenses carry an offense level of 26 and a sentencing range of 63-78 months, and that counsel provided ineffective assistance by not raising this claim at trial or on appeal.  (Doc. 1225 at 48-50).  In essence, this is a *Blakely*/*Booker* claim.[6]  (*See* Doc. 1468-1 at 4-5).

---

[5]Counsel's failure to request a special jury verdict form for count 2, similar to the form the jury used for count 1 (*see* Doc. 1538-3 at 78-82), did not constitute ineffective assistance, either.  *See Harned v. United States*, 511 Fed. Appx. 829, 830-31 (11th Cir. 2013) (affirming rejection of § 2255 movant's ineffective-assistance claim based on counsel's failure "to request that the jury return a special verdict identifying the object of the conspiracy" count on which movant was convicted; and citing *United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996), to the effect that "the district court acted within its discretion in denying appellants' request for a special verdict on the RICO conspiracy count" (internal quotations omitted)).

[6]"The constitutional [*Booker*] error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the *mandatory* nature of the guidelines once the guidelines range has been determined."  *Mathenia*, 409 F.3d at 1291 (internal quotations

24

The government responds that Movant is mistaken—not only did counsel raise the ground five claim at sentencing and on appeal, but this Court and the Eleventh Circuit properly rejected the claim. (Doc. 1466 at 18-21). The government notes that the probation officer found an offense level of 52 and a guideline range of life imprisonment and that Movant's counsel argued at sentencing for an offense level of 27 and a guideline range of 70-87 months. The government argues that "[t]his Court correctly rejected defense counsel's position, because the Guidelines hold [Movant] accountable for all of the conduct which was reasonably foreseeable to him and within the scope of his conspiracy – including conduct for which [he] was acquitted or never even charged." (*Id.* at 19).

The government notes that in sentencing Movant to life imprisonment, this Court found him guilty beyond a reasonable doubt of murder, two home invasions, attempted kidnapping, and kidnapping. (*Id.* at 19-20). Although the Eleventh Circuit found that this Court erroneously based some of its findings with respect to the conspiracy count on the preponderance standard, the Eleventh Circuit concluded that the error was harmless because this Court also found, using the reasonable doubt standard, that there was a sufficient basis under the guidelines to sentence Movant to

omitted) (emphasis added).

25

at least 20 years' imprisonment.  (*Id.* at 20).   The government argues that this

conclusion is the "law of the case" and cannot be disturbed here.[7]  (*Id.* at 20-21).

In 2001, applying the *Apprendi* holding without the benefit of the *Blakely* and

*Booker* holdings, which came later, the Eleventh Circuit ruled on direct appeal that

Movant's RICO sentences could not exceed the 20-year statutory maximum on each

count, or 40 years total, but otherwise found either no error or only harmless error in

this Court's sentencing calculations for Movant.  *See Nguyen*, 255 F.3d at 1342-44

(holding that Movant's life sentences must be vacated "because they exceeded forty

years, the combined maximum sentences of the substantive count and the conspiracy

count," but otherwise not limiting the term of imprisonment to which this Court could

sentence Movant on remand).  This ruling by the Eleventh Circuit on the issue Movant

raises in his ground five claim settles the matter.  *See Nyhuis*, 211 F.3d at 1343 (a

district court "is not required to reconsider claims of error that were raised and

disposed of on direct appeal").  Movant's ground five challenge to the guidelines

---

[7]"[T]he 'law-of-the-case doctrine. . . . holds that an appellate court's factual findings and legal conclusions are 'generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.' *Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1405 (11th Cir. 2009). The purpose of the doctrine is to 'bring[] an end to litigation, protect[] against agitation of settled issues, and assur[e] that lower courts obey appellate orders.' *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006)." *Feng Chai Yang v. United States AG*, No. 13-15443, 2014 U.S. App. LEXIS 15220, at *3 (11th Cir. Aug. 7, 2014).

26

calculations this Court used to determine his three 240-month sentences therefore fails. Movant also has shown neither deficient performance nor prejudice arising from counsel's performance with respect to this Court's calculations. *See Strickland*, 466 U.S. at 690, 694.  His 720-month sentence was before the Eleventh Circuit on his second appeal, and that court declined to provide him any further relief.  And, as discussed directly below, Movant may not raise a *Blakely/Booker* claim via a § 2255 motion.  Movant's ground five claims fail.

### 3.   **Motion to Amend:  *Blakely/Booker* Error**

In his motion to amend, filed on July 20, 2004, Movant argues that his sentence violates *Blakely*, which he contends requires that a sentence must not exceed the term of imprisonment dictated by the jury's verdict and must not be enhanced under "the current determinate sentencing scheme" based on facts—alleged in a presentence investigation report or charged in those counts of an indictment on which the defendant was not convicted—not proven to the jury beyond a reasonable doubt.  (Doc. 1242 at 2).

In Movant's first direct appeal, counsel successfully argued that Movant's RICO sentences should be capped at 20-years' imprisonment rather than imprisonment for life.  At Movant's resentencing in November 2001, counsel argued that Movant's

27

offense level should be 28 and his sentencing range 78-97 months based on the conduct for which the jury convicted Movant.  Counsel argued that it would be a violation not only of Movant's Fifth Amendment due process rights but also of his Sixth Amendment jury trial right to sentence him based on conduct for which the jury did not convict him.  (Doc. 1538-3 at 101-09).  This Court rejected that argument, and the Eleventh Circuit affirmed Movant's resulting 720-month sentence.  Direct review ended on May 5, 2003, when the Supreme Court denied Movant's petition for certiorari review.  (*See* Doc. 1466 at 2); *Nguyen v. United States*, 538 U.S. 1022 (2003).

Because direct review of Movant's sentences ended before either *Blakely* or *Booker* was decided, this Court may entertain Movant's *Blakely*/*Booker* claim only if one or both decisions apply retroactively to cases on collateral review.  As noted above, the Eleventh Circuit has held that neither decision does apply retroactively.  *See Varela*, 400 F.3d at 867; *see also Howell*, 730 F.3d at 1264 (Jordan, J., concurring).  Movant's *Blakely*/*Booker* claim is therefore not properly before this Court.

And Movant's counsel's failure to anticipate the *Blakely*/*Booker* change in the law does not amount to ineffective assistance, either.

It is well settled in this circuit that an attorney cannot be deemed

28

ineffective for failing to anticipate a later change in the law.  *See Black v. United States*, 373 F.3d 1140, 1144, 1146 (11th Cir. 2004) (holding that counsel does not render deficient performance in "failing to predict what was not yet a certain holding" and where, at the relevant time, "the legal principle at issue [was] unsettled"); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (noting that "we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," and that precedent applies even when the "issue was, in hindsight, a sure fire winner"); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law.") . . . .

*Parker v. Sec'y, Fla. Dep't of Corr.*, 555 Fed. Appx. 870, 874-75 (11th Cir. 2014).

Finally, even if *Blakely* and *Booker* did apply retroactively, they most likely would not help Movant.  Given the life sentence that he received from this Court in 1998, before the Eleventh Circuit applied the *Apprendi* holding to reduce those sentences, it is almost certain that upon remand under a *Blakely/Booker* sentencing scheme, this Court would have sentenced Movant to the same 720-month term of imprisonment that he in fact received.  (*See* Doc. 1538-3 at 118-19 (where, at the second sentencing hearing, this Court expressed its view that Movant's 720-month sentence was "particularly just . . . because the Court found beyond a reasonable doubt that [Movant] was the leader of this gang of criminals at a time that they were involved in a host of violent crimes perpetrated upon people within the Asian community and

29

Asians throughout the United States," which "crimes were particularly violent in their execution," leading "this Court to believe that the protection of society whether it be in Vietnam or here in America calls for stiff punishment")).  Any constitutional *Booker* error here, i.e., any error arising from this Court's having used extra-verdict enhancements in a *mandatory* rather than an advisory sentencing scheme to determine Movant's sentences, was almost certainly harmless.  *See Lee*, 427 F.3d at 891-92.  For all of the foregoing reasons, Movant's substantive and ineffective-assistance claims that he has raised in his motion to amend are without merit.

> **B.    Ground Two:  The Government Was Allowed To Present A Prejudicial And Confusing List of Racketeering Acts To The Jury.**

In ground two, Movant argues that "the government was allowed to use other alleged criminal acts by Movant and his alleged co-conspirators to create the impression that Movant committed [these] acts" or conspired with others to commit them, in order "to prejudice Movant before the jury by inference that where there were so many charges [he] had to be guilty of some of them."  (Doc. 1225 at 10).  Movant alleges that this overcharging confused the jury and created "a trial atmosphere that was specifically designed to prejudice Movant's right to . . . a trial free from such highly prejudicial claims that had no merit as found by the jury in its verdict."  (*Id.*).

"If the joinder of offenses or defendants . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

> The law of this circuit is clear that the denial of a motion for severance will be reversed only for abuse of discretion since, particularly in conspiracy cases, persons who are charged together should also be tried together. To establish an abuse of discretion the defendant must demonstrate that without severance he was unable to receive a fair trial and that he suffered *compelling prejudice* against which the trial court could offer no protection. This court has also said that a defendant does not suffer compelling prejudice simply because much of the evidence at trial is applicable only to codefendants.

*United States v. Freyre-Lazaro*, 3 F.3d 1496, 1501 (11th Cir. 1993) (citations and internal quotations omitted) (emphasis added).

Movant did not raise his ground two claim on direct appeal and therefore he may not raise it here unless he shows cause and prejudice to excuse his procedural default. He has not. Additionally, he has not alleged ineffective assistance of counsel with respect to this claim. To the extent, however, that his § 2255 motion taken as a whole could be construed as raising an ineffective-assistance claim, it is noteworthy that trial counsel did move the Court for an order requiring the government to develop a "severance plan" for trial, in light of the large number of defendants and offenses

31

involved in this case.  (*See* Doc. 206).  Movant argues that counsel's failure to pursue the issue on appeal constitutes deficient performance.  (Doc. 1468 at 11; Doc. 1468-1 at 1-2).

But Movant cannot show "compelling prejudice" arising from the joinder of the claims and parties here.  The jury verdict clearly shows that the jurors were capable of distinguishing the 33 RICO predicate acts charged against Movant from each other and from the other predicate acts charged against his co-defendants.  In the end, the jury found that Movant had committed only 2 of those 33 predicate acts.  *See Nguyen*, 255 F.3d at 1338 n.2.   The jury also found that Movant's five co-defendants had committed, respectively, only 2 of 19, 2 of 26, 4 of 13, 2 of 6, and 0 of 11 alleged predicate acts.  *Id.*  There is thus no reasonable probability that Movant's ground two claim would have succeeded if raised on direct appeal.  Ground two fails both as a claim of ineffective assistance of counsel, *see Strickland*, 466 U.S. at 694, and as a substantive claim because Movant has not shown cause sufficient to overcome the procedural default of this claim, *see Nyhuis*, 211 F.3d at 1344.

### C.    Grounds Three & Four:  The Evidence Was Insufficient To Support Movant's Hobbs Act Conviction, And Counsel Did Not Object.

In his next two grounds for relief, Movant alleges that his due process rights

32

were violated with respect to his count 28 Hobbs Act conviction. The Hobbs Act requires (1) interference with a business enterprise, not an individual, and (2) an effect on interstate commerce.[8]  Movant contends the evidence at trial supports neither of these two required elements of a Hobbs Act conviction. (Doc. 1225 at 39-47; *see* Doc. 1468-1 at 2-4).

The government responds that the indictment alleged, and the proof at trial established, that Movant and his associates extorted money from Tom's Body Shop—i.e., a business, not an individual, which business regularly worked on foreign automobiles—by visiting that business establishment on more than one occasion. (Doc. 1466 at 16-17; *see* Doc. 550 at 44-45 (Indictment Count 28 (Tom's Body Shop Robbery)); Doc. 1538 at 6-10 (Tom's Body Shop owner's trial testimony)).

"To convict on a Hobbs Act robbery, the government must prove a robbery [or extortion] and an effect on interstate commerce." *United States v. Ransfer*, 743 F.3d 766, 782 (11th Cir. 2014).

[C]ommerce is affected when an enterprise, which either is actively engaged in interstate commerce or customarily purchases items in

---

[8]The Hobbs Act provides: "Whoever *in any way or degree* obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a) (emphasis added).

33

> interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of such goods. [T]he government need only show a minimal effect on interstate commerce to sustain jurisdiction under the Hobbs Act.

*Id.* at 788 (citations and internal quotations omitted); *see* 18 U.S.C. § 1951(b)(3) (Hobbs Act "commerce" includes "all commerce between any point in a State . . . and any point outside thereof").

Evidence at Movant's trial tended to show that he and his co-conspirators extorted money from the owner of Tom's Body Shop, a business that engaged in commerce in Georgia involving items purchased outside of Georgia, i.e., foreign automobiles and their parts.  (*See* Doc. 1538 at 6-10).  This evidence provided sufficient support for Movant's Hobbs Act conviction.  *See United States v. Verbitskaya*, 406 F.3d 1324, 1335-36 (11th Cir. 2005) (finding that extortion that "directly affected [victim's] ability to . . . use his money for his Russian dance business" was sufficient to sustain a Hobbs Act conviction).  Movant's ground three and four claims fail for the same reason that the challenges to the Hobbs Act convictions in *Verbitskaya* failed.  Counsel was not ineffective for not raising these meritless claims at Movant's trial or on appeal because there is no reasonable likelihood that this Court or the Eleventh Circuit would have granted Movant relief on

34

his ground three and four claims.  These claims therefore fail both as claims of ineffective assistance of counsel, *see Strickland*, 466 U.S. at 694, and as substantive claims because Movant has not shown cause sufficient to overcome their procedural default, *see Nyhuis*, 211 F.3d at 1344.

> **D.    Ground Six:  The Court Dismissed A Juror Rather Than Granting A Mistrial, And Counsel Did Not Object.**

Movant next argues that his right to a fair trial was violated when either a fellow juror or the U.S. Marshals tampered with and intimidated a juror for one week by placing duct tape on the juror's chair in the jury box and drawing pictures on the juror's notepad, and that his trial counsel mishandled the situation.  (Doc. 1225 at 51-63; *see* Doc. 1468-1 at 5-6 (acknowledging that this issue was addressed on direct appeal but requesting an evidentiary hearing to explore it more thoroughly)).

The government responds that the record shows that Movant's trial counsel twice joined in a motion for a mistrial, initially when the jury tampering issue first came to light, and again after this Court interviewed the juror in question as well as other jurors and then dismissed the affected juror.  (Doc. 1466 at 21-22; *see* Doc. 1538 at 62 *et seq.*).  Movant raised this issue on appeal, but the Eleventh Circuit rejected the claim without discussion.  *See Nguyen*, 255 F.3d at 1339 n.5.  The government argues

that this issue is settled by the "law of the case" doctrine. (Doc. 1466 at 22). The Court agrees. *See Nyhuis*, 211 F.3d at 1343 (a district court "is not required to reconsider claims of error that were raised and disposed of on direct appeal"). Ground six fails as a substantive count. Movant also has not shown a reasonable probability that a different argument on appeal would have prevailed on this claim and thus has failed to establish ineffective assistance of counsel with respect to his ground six claim. *See Strickland*, 466 U.S. at 694.

**E.   Ground Seven:  The Court Gave A Coercive *Allen* Charge, And Counsel Did Not Object.**

Movant next argues that this Court gave a coercive *Allen* charge after the jury returned on March 9, 1998 with a decision on only 38 of the more than 200 charges left to their consideration, entitling him to a new trial; and trial counsel provided ineffective assistance by failing to object to the *Allen* charge. (Doc. 1225 at 64-66; *see* Doc. 1468-1 at 6).

The government responds that not only did trial counsel object to the modified *Allen* charge that this Court gave the jury after it had rendered a partial verdict only, but also that the charge the Court gave was the Eleventh Circuit's pattern jury charge and thus not coercive. (Doc. 1466 at 22-23; *see* Doc. 1538-2 at 20 *et seq.*; *id.* at 35-36

36

(this Court's *Allen* jury charge)).

"The *Allen* charge instructs a deadlocked jury to undertake further efforts to reach a verdict." *United States v. Bush*, 727 F.3d 1308, 1311 n.1 (11th Cir. 2013) (internal quotations omitted). This Court began its *Allen* charge, which it delivered after the jury had been deliberating for over a month (*see* Docs. 827-849, 872), by indicating that the charge was not intended "to coerce or to unduly influence" the jurors. (Doc. 1538-2 at 35). The remainder of the charge tracked virtually word for word the Eleventh Circuit's pattern jury instruction to be delivered in such circumstances. (*Compare* Doc. 1538-2 at 35-36 *with Bush*, 727 F.3d at 1319).

The *Bush* court noted that "[t]he *Allen* charge in [that] case was derived from the Eleventh Circuit pattern *Allen* instructions, which [the Eleventh Circuit has] approved on numerous occasions[,]" so that it would have been pointless for appellant to argue that the language of the charge was coercive; and because, as here, "the district court did not poll the jury before giving the *Allen* charge, [the Eleventh Circuit could] reverse the verdict only if [it found] that the charge was *inherently coercive*." *Bush*, 727 F.3d at 1320 & n.6 (internal quotations omitted) (emphasis added). The *Bush* court found that the *Allen* charge was not premature merely because it was given only four hours after jury deliberations had begun and without an express statement from

37

the jury that it was deadlocked, and the totality of the circumstances did not indicate that the charge was inherently coercive. *Id.* at 1320-22 (finding "no abuse of discretion in the district court's decision to give the *Allen* charge," and affirming appellant's convictions). Had Movant's counsel appealed the *Allen* charge used in this case, there is no reasonable probability that the outcome would have been different from the outcome in *Bush*. Having failed to establish ineffective assistance of counsel with respect to his ground seven claim, *see Strickland*, 466 U.S. at 694, Movant also has failed to overcome the procedural default of his substantive ground seven claim, *see Nyhuis*, 211 F.3d at 1344. Ground seven therefore fails.

 **F.** **Grounds Eight & Nine: (8) Cumulative Error Based On Counsel's Performance And (9) Appellate Counsel Failed To Raise The Foregoing Claims.**

 For the reasons stated above with respect to grounds one through seven, ground eight fails. Movant has not demonstrated any constitutional error, much less cumulative error, based on his counsel's performance. Ground nine also fails because any of the foregoing eight grounds for relief that counsel did not raise on direct appeal lacks sufficient merit to support a finding that counsel provided ineffective assistance by not raising it on appeal. *See Lucey*, 469 U.S. at 394 (appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant"); *see also*

38

*Robbins*, 528 U.S. at 288 (noting that "it is difficult to demonstrate that [appellate] counsel was incompetent" for failing "to raise a particular claim," and "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome" (internal quotations omitted)).

**V.      Certificate of Appealability**

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate.    28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B).   A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

39

> When the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, . . . a
> certificate of appealability should issue only when the prisoner shows
> both that jurists of reason would find it debatable whether the petition
> states a valid claim of the denial of a constitutional right *and* that jurists
> of reason would find it debatable whether the district court was correct in
> its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted)
(citing *Slack*, 529 U.S. at 484). Although *Slack* involved an appeal from the denial of
a 28 U.S.C. § 2254 petition, the same standard applies here. *See Jones v. United
States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case).
Because Movant has not raised a claim of arguable merit, a COA is not warranted here.

## VI.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY**
Movant's 28 U.S.C. § 2255 motion (Doc. 1225); **DISMISS** this action; and **DENY**
Movant a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 4th day of September, 2014.

 /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

40